**Nos. 25-1495, 25-1500**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

STATE OF NEW YORK, *et al.*,

*Plaintiffs-Appellees*,

v.

LINDA MCMAHON, in her official capacity as Secretary of Education, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Massachusetts

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL AND IMMEDIATE ADMINISTRATIVE STAY**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*
LEAH B. FOLEY
  *United States Attorney*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
MARK R. FREEMAN
MELISSA N. PATTERSON
STEVEN A. MYERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7232*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 305-8648*
  *Steven.A.Myers@usdoj.gov*

## INTRODUCTION

If the Executive Branch were actually trying to unilaterally close the Department of Education, and if the district court had simply enjoined such a closure, this would be a different case. Yet in reality, the Department (1) retains more than 2,000 employees; (2) is committed to performing all its statutory duties; and (3) has unambiguously acknowledged that it will remain open unless Congress closes it. And the court's injunction, far from simply requiring the Department's continued operation, mandates the continued employment of over a thousand employees so that the Department "is restored to the status quo" as it existed during the last administration. Op. 88.

A stay of that extraordinary order is obviously warranted. The district court lacked Article III jurisdiction to superintend the Department's operations based on its disagreement with politically accountable officials about appropriate staffing levels. And the Civil Service Reform Act divested the court of jurisdiction to hear this challenge to a federal personnel action. On the merits, the court wrongly assumed that the Executive Branch was closing the Department, and challenges to day-to-day managerial decisions are not cognizable. Moreover, neither plaintiffs nor the district court identified any certainly impending harms or neglected statutory functions that could justify the injunction's gross intrusion on the Executive Branch's authority to determine appropriate staffing levels—especially given the government's inability to recover the salaries that it must continue paying while injunction remains in effect.

When presented with injunctions suffering from similar defects, the Supreme Court has consistently stayed them. *See OPM v. AFGE*, No. 24A904, 2025 WL 1035208 (U.S. Apr. 8, 2025) (staying injunction with obvious standing defects); *Department of Educ. v. California*, 145 S. Ct. 966, 968-69 (2025) (per curiam) (staying injunction that would cause irrevocable financial injury to government); *Trump v. Wilcox*, No. 24A966, 2025 WL 1464804, at *1 (U.S. May 22, 2025) (granting stay given harms of "order allowing a removed officer to continue exercising the executive power"). Given this injunction's manifest flaws, this Court should follow the Supreme Court's lead and grant the motion for a stay, and we respectfully request that it issue at least an administrative stay by tomorrow (Tuesday) at noon.

## ARGUMENT

### I. The Government Is Likely To Prevail On The Merits.

#### A. The District Court Lacked Jurisdiction.

The district court lacked jurisdiction because this case does not present an Article III controversy and because the CSRA divests courts of jurisdiction to resolve federal personnel challenges.

#### 1. Article III Standing

Plaintiffs' claims reduce to their belief that the Department cannot function with two thousand employees. Article III does not countenance such second-guessing of Article II managerial decisions.

2

Plaintiffs do not seriously dispute that they may not rest standing upon a generalized interest in vindicating the separation of powers. *See* States.Opp. 14; Somerville.Opp. 18. Nor could they. It is true that federal courts sometimes must "resolve a question of separation of powers," States.Opp. 15, but they do so only in cases that involve the "the constitutional rights and liberties of individual citizens," *Raines v. Byrd*, 521 U.S. 811, 829 (1997) (quotation marks omitted).

Like the district court, plaintiffs offer predictions that the Department will be unable to satisfy its statutory obligations with anything less than the headcount chosen by the prior administration. As explained in our motion, most of the court's statements on this point consisted of speculation about things that could or might occur later. *See* Mot. 12-13. Much of plaintiffs' arguments in opposition are similar. *See, e.g.*, States.Opp. 8 (anonymous declarant "concerned" about the Department's ability to perform functions). Such speculation and conjecture are inadequate.

Attempting to make contingent future injuries appear more immediate and real, plaintiffs recast them as present uncertainty injuries. *See, e.g.*, Somerville.Opp. 18-19 (suggesting plaintiffs are currently uncertain about their budgets because they do not know if the Department can perform its functions in the future). Yet Article III requires a future harm to be "certainly impending"; "allowing respondents to bring [an] action based on costs they incurred in response to a speculative threat would be tantamount to accepting" as sufficient that speculative threat itself. *Clapper v. Amnesty*

3

*Int'l USA*, 568 U.S. 398, 416 (2013). That holding controls: plaintiffs' concern about the Department's future performance, however sincere, is not cognizable today.

Nor can plaintiffs overcome these problems by suggesting that the states have had "to investigate civil rights violations that the Department can no longer handle." States.Opp. 25. Whether to investigate any particular case is committed to the Department's absolute discretion, *Heckler v. Chaney*, 470 U.S. 821 (1985), and the states may not manufacture standing by voluntarily expending resources because they think more cases warrant investigation, *e.g.*, *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024) (rejecting contention that "standing exists when an organization diverts its resources in response to a defendant's actions"); *United States v. Texas*, 599 U.S. 670, 674 (2023) (states lack standing to seek an "order [to] the Executive Branch to alter its arrest policy so as to make more arrests").

Instead, the Supreme Court has made clear that if plaintiffs fail to receive funds to which they are entitled, *then* "they can recover any wrongfully withheld funds through suit in an appropriate forum." *California*, 145 S. Ct. at 969.[1]  Such a suit would be "a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quotation marks omitted). This case, in which the district court placed the Department "into receivership" because it disagrees with the

---

[1] Plaintiffs suggest they are bringing "APA claims for injunctive relief" rather than "claims for compensatory damages," Somerville.Opp. 22, but the same was true in *California*, where plaintiffs brought "claims under the Administrative Procedure Act." 145 S. Ct. at 968.

4

current leadership's management, *Carter v. Department of Educ.*, No. 25-0744, 2025 WL 1453562, at *10 (D.D.C. May 21, 2025) (quotation marks omitted), is not.

### 2. CSRA Preclusion

Compelling the government to reinstate thousands of employees flouts the exclusive scheme created by the Civil Service Reform Act and the Federal Service Labor-Management Relations Statute. *See* Mot. 13-16. Plaintiffs' contrary arguments are wrong.

Plaintiffs' arguments are principally revealing for what they do not include. Neither response addresses even one of the leading CSRA cases from the Supreme Court or this Court: among the cases they completely ignore are the Supreme Court's decision in *United States v. Fausto*, 484 U.S. 439 (1988), which holds that parties lacking CSRA rights may not bring litigation outside the CSRA, and this Court's decisions in *Rodriguez v. United States*, 852 F.3d 67 (1st Cir. 2017), *Gonzalez v. Velez*, 864 F.3d 45 (1st Cir. 2017), and *Berrios v. Department of the Army*, 884 F.2d 28 (1st Cir. 1989), which all emphasize the CSRA's exclusivity. Nor do they meaningfully address *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), which establishes that comprehensive schemes authorizing review by one category of plaintiffs foreclose claims by anyone else.[2] Those cases dispose of plaintiffs' argument that their

---

[2] The Somerville plaintiffs include one sentence describing the facts of *Block* but offering no explanation of why its holding does not apply. *See* Somerville.Opp. 16 n.2.

5

exclusion from the CSRA scheme permits them to bring claims in district court. *See* Somerville.Opp. 16.

Were the law otherwise, opportunities for gamesmanship would abound. Any plaintiff injured by a RIF could bring a lawsuit until somebody found a court willing to enjoin it. This case proves the point: the district court required the government to reinstate employees whom another district court refused to reinstate *one day* earlier. *See Carter*, 2025 WL 1453562. Plaintiffs' theory would guarantee conflicting decisions concerning personnel actions, reviving the "haphazard" "patchwork" the CSRA was enacted to avoid. *Fausto*, 484 U.S. at 444-45.[3]

Plaintiffs suggest that their claims fall outside the CSRA because they challenge more than a personnel action. *See* States.Opp. 17 (contending that CSRA preclusion does not apply because plaintiffs' claims go to the Department's "structure or very existence" (quotation marks omitted)); Somerville.Opp. 3 (MSPB lacks "any expertise on the issues"). Yet this case *is* about a personnel action; as plaintiffs eventually

---

[3] Instead of addressing the principal CSRA cases, plaintiffs cite a handful of inapposite opinions. Many are lower-court decisions from which appeals are pending. *See* Somerville.Opp. 17; States.Opp. 16-17. And the only circuit order plaintiffs cite hardly supports their position. *See* Somerville.Opp. 17 (citing Order, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Apr. 28, 2025)). In *NTEU*, the district court ordered reinstatement of "all probationary and term employees" who had been terminated. *NTEU v. Vought*, --- F. Supp. 3d ----, 2025 WL 942772, at *46 (D.D.C. Mar. 28, 2025). The D.C. Circuit is still considering the government's appeal, and in the interim, it substantially stayed that provision of the preliminary injunction. *See* Order, *NTEU v. Vought*, No. 25-5091 (D.C. Cir. Apr. 11, 2025). The subsequent order that plaintiffs cite did not disturb that aspect of the earlier stay.

acknowledge, the purported agency actions they challenge are the "mass terminations under the RIF." States.Opp. 23; *see also* Somerville.Opp. 15 (RIF "is a concrete, final agency action").

To be sure, plaintiffs have dressed up their challenge to this personnel action in apocalyptic constitutional language. But as another Supreme Court case plaintiffs ignore makes clear, even constitutional challenges are subject to the CSRA. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 22 (2012) (constitutional challenge to Military Selective Service Act subject to CSRA). Plaintiffs instead cite *Axon Enterprises v. FTC*, 598 U.S. 175 (2023), a case that does not even concern CSRA preclusion. *But see* Somerville.Opp. 17 (incorrectly contending that *Axon* involved channeling to the MSPB). *Elgin* controls here.

### B. Plaintiffs' Claims Fail On The Merits.

Even if plaintiffs could surmount these jurisdictional obstacles, their claims would still fail.

**1.** As we have explained, the Executive Branch has not shut down the Department and will not do so absent congressional authorization. Even plaintiffs now concede that this case is about, in their words, a "constructive partial closure." Somerville.Opp. 8. Whatever that term means, it is apparently something less than an *actual* closure. Plaintiffs contest the Executive Branch's assessment of the staffing levels necessary to operate the Department, but that is a policy disagreement about day-to-day operations—not a challenge to final agency action. *See Lujan v. National*

7

*Wildlife Fed'n*, 497 U.S. 871, 899 (1990). Plaintiffs' only response is to suggest that they are actually challenging the RIF as a "discrete order," Somerville.Opp. 15, but that argument is irreconcilable with their position that they are "not asking the court to review the propriety of employment actions," States.Opp. 15-16. Plaintiffs cannot have it one way when seeking to avoid CSRA preclusion and another when trying to establish final agency action.

Because plaintiffs' claims are not reviewable under the APA, their suggestion that the government was bound to consider "reliance interests" in staffing levels, Somerville.Opp. 13, is wrong. So too is their suggestion that the government did not "exercise any reasoned judgement" concerning its ability to perform its statutory functions, Somerville.Opp. 15. As explained, the Department expressly determined that the challenged RIF will not impair its ability to perform its statutorily mandated functions. *See* Mot. 1, 5-6. Plaintiffs would like to litigate whether the government is right about that, but neither Article III nor the APA permits them to preemptively second-guess the Department's judgment. The government is not afraid of the merits, which could conceivably be litigated through suits under 5 U.S.C. § 706(1) or the Tucker Act, *see* Mot. 19; this Court, however, lacks the power to hear them.

**2.** Many of plaintiffs' claims do not involve statutory obligations at all. Plaintiffs complain about a "decline in customer support" from a call center, States.Opp. 13, and they worry that the Department will provide less technical assistance, Somerville.Opp. 20. On the merits, however, the question is not whether

8

the Department will look as it did on January 20, 2025; it is whether the Department will fail to comply with discrete legal obligations. *See Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 64 (2004). And having failed to establish statutory violations, plaintiffs obviously lack constitutional or ultra vires claims. *See* Mot. 17-18.[4]

3.  The district court's order dramatically exceeded its equitable powers, as reinstatement was not a remedy available at equity. *See* Mot. 19. Plaintiffs quibble with the facts of *Sampson v. Murray*, 415 U.S. 61 (1974), *see* States.Opp. 24, but they do not identify any authority suggesting that courts of equity could award reinstatements, the relevant question here. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). As explained elsewhere, they could not. *See* Application, *OPM v. AFGE*, No. 24A904, at 21-23 (U.S. Mar. 24, 2025).

4.  Even if the Executive Branch were endeavoring to unilaterally terminate the Department, that could at most justify an injunction prohibiting the Department from doing so. The court's apparent belief that the *only* form in which the Department may lawfully exist is the form in which it existed on January 20, 2025, is indefensible, and plaintiffs barely argue otherwise. Plaintiffs fault the government for failing to "propose alternative relief," States.Opp. 12, but it was *plaintiffs'* burden to

---

[4] Plaintiffs identify no reason why it would violate the law for another department to assist with the Department's functions. *See* Mot. 16-17 n.3. And plaintiffs' references to 20 U.S.C. § 3473 are a red herring, *see* Somerville.Opp. 14; States.Opp. 19, 22, because the challenged RIF is not an exercise of § 3473 authority.

9

justify the "extraordinary remedy" of a preliminary injunction. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). And under "well-known principles of equity," the district court was required to "select a fitting remedy for the legal violations it has identified," *North Carolina v. Covington*, 581 U.S. 486, 488 (2017) (per curiam) (citation omitted)—but departing from the prior administration's employee count is hardly a legal violation. The mere fact that the injunction would return to a pre-injunction status quo is far from adequate, for "[m]aintenance of the status quo is only a sometimes concomitant of preventing irreparable harm" but "never the touchstone for such injunctive relief." *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975) (per curiam).

## II. The Equitable Factors Favor A Stay.

The equities favor a stay. Plaintiffs have not demonstrated Article III injury, let alone irreparable harm. It is true that plaintiffs submitted "dozens" of declarations, States.Opp. 2, and "extensive exhibits," Somerville.Opp. 11, but the *Winter* test does not ask who filed the most declarations or longest attachments.

Plaintiffs do not seriously dispute that the injunction grossly intrudes on the Executive Branch's Article II authority. *See* States.Opp. 26 (conceding "that the 'constitutional order' requires policy judgments to be made by the 'politically accountable' branches"). Nor do they dispute that the government will be unable to recover the salaries and other expenses that the injunction requires it to continue paying. Plaintiffs question whether the amount of money at stake is "significant in the

10

context of Department of Education expenditures," Somerville.Opp. 23, but the Supreme Court did not ask that question in *California*, 145 S. Ct. 966, which involved about $65 million in grant funds, *see* Application, *Department of Education v. California*, No. 24A910, at 9 (U.S. Mar. 26, 2025).  This case involves over a thousand employees, and the costs of requiring their continued employment are obvious—as are the operational burdens of finding work for employees the Department considers unnecessary to fulfill its statutory obligations.

## CONCLUSION

The Court should grant a stay pending appeal and an immediate administrative stay. The government respectfully requests that the Court act by Tuesday, May 27, at noon.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*
LEAH B. FOLEY
  *United States Attorney*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
MARK R. FREEMAN
MELISSA N. PATTERSON

*/s/ Steven A. Myers*
STEVEN A. MYERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7232*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 305-8648*
  *Steven.A.Myers@usdoj.gov*

May 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2600 words. The reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Garamond typeface.

                                                       /s/ Steven A. Myers
                                                     STEVEN A. MYERS

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Steven A. Myers*
STEVEN A. MYERS
