# United States Court of Appeals
## For the First Circuit

No. 25-1495

SOMERVILLE PUBLIC SCHOOLS; EASTHAMPTON PUBLIC SCHOOLS; AMERICAN
FEDERATION OF TEACHERS; AMERICAN FEDERATION OF TEACHERS
MASSACHUSETTS; AMERICAN FEDERATION OF STATE, COUNTY, AND
MUNICIPAL EMPLOYEES, COUNCIL 93; AMERICAN ASSOCIATION OF
UNIVERSITY PROFESSORS; SERVICE EMPLOYEES INTERNATIONAL UNION,

Plaintiffs, Appellees,

v.

LINDA MARIE MCMAHON, in her official capacity as Secretary of
the U.S. Department of Education; DONALD J. TRUMP, in his
official capacity as President of the United States; U.S.
DEPARTMENT OF EDUCATION,

Defendants, Appellants.

————————————

No. 25-1500

STATE OF NEW YORK; COMMONWEALTH OF MASSACHUSETTS; STATE OF
HAWAII; STATE OF CALIFORNIA; STATE OF ARIZONA; STATE OF
COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF
ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; STATE OF MINNESOTA;
STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF OREGON; STATE OF
RHODE ISLAND; STATE OF WASHINGTON; STATE OF WISCONSIN; STATE OF
VERMONT; DANA NESSEL, Attorney General of Michigan; DISTRICT OF
COLUMBIA,

Plaintiffs, Appellees,

v.

LINDA MARIE MCMAHON, in her official capacity as Secretary of
the U.S. Department of Education; DONALD J. TRUMP, in his
official capacity as President of the United States; U.S.
DEPARTMENT OF EDUCATION,

Defendants, Appellants.

————————————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Myong J. Joun, U.S. District Judge]

———————————

Before

Barron, Chief Judge,
Kayatta and Rikelman, Circuit Judges.

———————————

Steven A. Myers, Attorney, Appellate Staff, Civil
Division, Yaakov M. Roth, Acting Assistant Attorney General, Leah
B. Foley, U.S. Attorney, Eric D. McArthur, Deputy Assistant
Attorney General, Mark R. Freeman and Melissa N. Patterson,
Attorneys, Appellate Staff, Civil Division, for appellants.

Andrea Joy Campbell, Attorney General of Massachusetts,
Katherine Dirks, Chief State Trial Counsel, Yael Shavit, Chief,
Consumer Protection Division, Anna Lumelsky, Deputy State
Solicitor, Elizabeth Carnes Flynn, Nathaniel Hyman, Arjun
Jaikumar, Assistant Attorneys General, Letitia James, Attorney
General of New York, Barbara D. Underwood, Solicitor General, Ester
Murdukhayeva, Deputy Solicitor General, Matthew W. Grieco, Senior
Assistant Solicitor General, Anne E. Lopez, Attorney General of
Hawai'i, David D. Day, Special Assistant to the Attorney General,
Kaliko'onālani D. Fernandes, Solicitor General, Ewan C. Rayner,
Caitlyn B. Carpenter, Deputy Solicitors General, Rob Bonta,
Attorney General of California, Lucia J. Choi, Deputy Attorney
General, Michael L. Newman, Senior Assistant Attorney General,
Srividya Panchalam, James E. Stanley, Supervising Deputy Attorneys
General, Natasha A. Reyes, Megan Rayburn, Deputy Attorneys
General, Kristin K. Mayes, Attorney General of Arizona, Clinten N.
Garrett, Senior Appellate Counsel, Kathleen Jennings, Attorney
General of Delaware, Ian R. Liston, Director of Impact Litigation,
Vanessa L. Kassab, Deputy Attorney General, Phil Weiser, Attorney
General of Colorado, David Moskowitz, Deputy Solicitor General,
Brian L. Schwalb, Attorney General of the District of Columbia,
Andrew Mendrala, Assistant Attorney General, Public Advocacy
Division, William Tong, Attorney General of Connecticut, Michael
Skold, Solicitor General, Patrick Ring, Assistant Attorney
General, Kwame Raoul, Attorney General of Illinois, Jane Elinor
Notz, Solicitor General, Sarah A. Hunger, Deputy Solicitor
General, Aaron M. Frey, Attorney General of Maine, Sean D. Magenis,
Assistant Attorney General, Keith Ellison, Attorney General of
Minnesota, Liz Kramer, Solicitor General, Joseph R. Richie,

Special Counsel, Rule of Law, <u>Anthony G. Brown</u>, Attorney General of Maryland, <u>Julia Doyle</u>, Solicitor General, <u>Keith M. Jamieson</u>, Assistant Attorney General, <u>Aaron D. Ford</u>, Attorney General of Nevada, <u>Heidi Parry Stern</u>, Solicitor General, <u>Dana Nessel</u>, Attorney General of Michigan, <u>Neil Giovanatti</u>, <u>Kathleen Halloran</u>, Assistant Attorneys General, <u>Matthew J. Platkin</u>, Attorney General of New Jersey, <u>Jessica L. Palmer</u>, <u>Andrew Simon</u>, Deputy Attorneys General, <u>Dan Rayfield</u>, Attorney General of Oregon, <u>Leigh A. Salmon</u>, Assistant Attorney General, <u>Nicholas W. Brown</u>, Attorney General of Washington, <u>Spencer W. Coates</u>, Assistant Attorney General, <u>Cristina Sepe</u>, Deputy Solicitor General, <u>Peter F. Neronha</u>, Attorney General of Rhode Island, <u>Kathryn T. Gradowski</u>, Special Assistant Attorney General, <u>Joshua L. Kaul</u>, Attorney General of Wisconsin, <u>Charlotte Gibson</u>, Assistant Attorney General, <u>Charity R. Clark</u>, Attorney General of Vermont, and <u>Jonathan T. Rose</u>, Solicitor General, for state appellees.

       <u>Rachel F. Homer</u>, <u>Elena Goldstein</u>, <u>Victoria S. Nugent</u>, and <u>Adnan Perwez</u>, for appellees Somerville Public Schools, Easthampton Public Schools, American Federation of Teachers, American Federation of Teachers Massachusetts, American Federation of State, County, and Municipal Employees, Council 93; American Association of University Professors, and Service Employees International Union.

———————————

June 4, 2025

———————————

BARRON, **Chief Judge**.  On March 13, 2025, two days after the U.S. Department of Education (the "Department") announced a reduction in force (RIF) that impacted approximately half of its employees, twenty-one states sued the Secretary of Education (the "Secretary"), the Department, and the President in the District of Massachusetts.  Soon after, five labor organizations and two school districts did the same.  The plaintiffs in the two cases then moved for a preliminary injunction against the Secretary and the Department, contending that the RIF violated the U.S. Constitution and the Administrative Procedure Act (APA).  The plaintiffs also sought an injunction against the transfer of certain functions out of the Department, which was announced by the President on March 21, based on the same alleged violations.  The District Court consolidated the two cases and, after making extensive factual findings, issued an order that granted the motions.  The appellants now move for a stay pending appeal of the District Court's order granting the preliminary injunction.  The stay is denied.

## I.

The District Court determined that the plaintiffs were likely to succeed on the merits of their claims.  It concluded that the "mass terminations" effected by the RIF and transfer of congressionally mandated functions to other agencies likely violated the separation of powers and were ultra vires in

- 4 -

consequence of the statute establishing the Department.  <u>See</u> 20 U.S.C. §§ 3401-3510.  The District Court also determined that the challenged actions likely violated the APA as being contrary to law, <u>see</u> 5 U.S.C. § 706(2)(A), in light of the Department's enabling statute as well as the "numerous federal laws that require the Department to carry out certain functions."

In addition, the District Court concluded that the challenged actions likely violated the APA because they were arbitrary and capricious.  <u>See</u> <u>id</u>.  It explained that the announcement of the RIF as well as the decision to transfer certain functions outside of the Department were not accompanied by "a reasoned explanation, let alone an explanation at all," and that nothing in the record demonstrated consideration of the substantial harms that would result for a variety of stakeholders including students, educational institutions, and the states.

The preliminary injunction provides as follows.  First, it enjoins the Department and Secretary "from carrying out the [RIF] announced on March 11, 2025; from implementing [the President's] March 20, 2025 Executive Order[, Improving Education Outcomes by Empowering Parents, States, and Communities, Exec. Order No. 14242, 90 Fed. Reg. 13679 (Mar. 20, 2025)]; and from carrying out the President's March 21, 2025 Directive to transfer management of federal student loans and special education functions out of the Department."  Second, it enjoins the same

- 5 -

defendants "from implementing, giving effect to, or reinstating" these directives "under a different name." Third, the order provides that the Department and Secretary "shall reinstate federal employees whose employment was terminated or otherwise eliminated on or after January 20, 2025, as part of the RIF announced on March 11, 2025, to restore the Department to the status quo such that it is able to carry out its statutory functions." Finally, it requires the Secretary and Department to provide notice of the preliminary injunction to their "officers, agents, servants, employees, attorneys, and anyone acting in concert with them" and file regular status reports with the District Court.

## II.

The appellants bear the burden of satisfying the well-established four-factor test for obtaining the extraordinary relief that is a stay of a preliminary injunction pending appeal. See Nken v. Holder, 556 U.S. 418, 433-34 (2009). We thus must consider whether the appellants have made: (1) a "strong showing that [they are] likely to succeed on the merits" in challenging the preliminary injunction on appeal; (2) a showing that they "will be irreparably injured absent a stay" pending the appeal's resolution; (3) a showing that the "issuance of the stay will [not] substantially injure the other parties interested in the proceeding"; and (4) a showing that the stay would serve "the

public interest." Id. at 426 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The first and second factors are the "most critical" ones. Id. at 434.

## III.

### A.

The appellants argue that the "likelihood of success" factor favors them because the plaintiffs lack Article III standing to pursue their claims. They do not dispute that the plaintiffs would suffer a cognizable injury under Article III if the Department were unable -- in consequence of actions taken to close it down -- to perform its statutorily assigned functions. Instead, they argue, in part, that, in contravention of Clapper v. Amnesty International USA, 568 U.S. 398 (2013), the plaintiffs' Article III standing rests on "speculation that, contrary to the Secretary['s] . . . judgment, the Department's remaining 2,183 employees will be unable to perform the Department's statutory functions."

In support of this argument, the appellants assert that the RIF did not -- and would not -- prevent the Department from carrying out its statutorily assigned functions, given the remaining employees' capacity to carry them out. But the District Court found, based on the evidence submitted by the plaintiffs, that the RIF, which it found was "explicitly implemented to shut

down the Department"[1] and "eliminat[ed] entire offices and programs," has "made it effectively impossible for the Department to carry out its statutorily mandated functions."[2]  And, insofar as the appellants mean to challenge that factual finding, they have submitted no evidence to support a contrary one.

The appellants do point to specific parts of the District Court's opinion as support for their argument that the District Court "principally focused on harms that could or might occur" in finding that harms to the plaintiffs are "certainly impending" under Clapper, 568 U.S. at 402.  Insofar as the appellants mean

---

[1] In finding that the RIF was implemented for the purpose of closing down the Department, the District Court relied in part on the executive order issued on March 20, which provided that "the Secretary [] shall, to the maximum extent appropriate and permitted by law, take all necessary steps to facilitate the closure of the Department of Education."  Improving Education Outcomes by Empowering Parents, States, and Communities, 90 Fed. Reg. at 13679.  The District Court also relied on the President's statements prior to the RIF that he would "like to close [the Department] immediately."  Even though the RIF preceded the executive order, the appellants do not dispute the relevance of the executive order to assessing the impact or lawfulness of the RIF.

[2] We highlight some of the District Court's specific findings about how the extent and nature of the RIF impacted particular functions within the Department.  For example, as to the Institute for Education Sciences (IES), which is the Department's main office for education research, the District Court found that the RIF had left it "unable to fulfill [its] mandates" to collect and analyze data because one of its subdivisions had "only three employees remaining" and, at two other subdivisions, "the only remaining employees are the two Commissioners."  As to the Department's Office of Federal Student Aid (FSA), the District Court found that "the entire team that supervises [the Free Application for Federal Student Aid (FAFSA)] was eliminated," such that "the administration of FAFSA applications will be disrupted."

to suggest, in pointing to those passages, that the District Court did not in fact find that the Department was already unable to carry out statutorily assigned functions in consequence of the RIF, we are not persuaded.   The District Court's detailed and extensive factual findings to the contrary throughout its opinion show that it did so find.   And insofar as the appellants mean to suggest, in pointing to those passages, that the District Court drew impermissibly speculative inferences in finding that the RIF made it effectively impossible for the Department to carry out its statutorily assigned functions, the appellants do not identify evidence in the record to counter the District Court's contrary findings about the impact of the RIF.

Thus, on the record before us, we see no basis on which to conclude that the appellants have made a "strong showing" that the District Court likely clearly erred in finding that the RIF made it effectively impossible for the Department to carry out its statutory obligations.[3]   See Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006)

---

[3] The stay motion's discussion of Article III standing focuses on the District Court's RIF-based findings, but the motion also contains a footnote in the merits section that states without elaboration that "[the] plaintiffs have identified no basis to conclude that any transfer of the Department's handling of student loans or special education is imminent."   As the District Court noted, however, the plaintiffs introduced evidence of the President's statement that the transfer of responsibilities would be happening "immediately."   The appellants identify no evidence to suggest that was not the case.

("When . . . the trial court's standing determination rests on findings of fact, we must honor those factual findings unless they are clearly erroneous."). That being so, the appellants also have not made a strong showing that they are likely to succeed on appeal in challenging the District Court's determination that the plaintiffs have Article III standing under Clapper because their injuries are certainly impending.

The appellants' citation to OPM v. American Federation of Government Employees, No. 24A904, 2025 U.S. LEXIS 1451 (U.S. Apr. 8, 2025), does not convince us otherwise. There, a district court entered a preliminary injunction that required six federal agencies to reinstate all their probationary employees who had been terminated in February 2025. Am. Fed'n of Gov't Emps. v. OPM, No. C 25-01780, 2025 WL 820782, at *1 (N.D. Cal. Mar. 14, 2025). The Supreme Court of the United States then stayed that ruling on the ground that, "under established law," the allegations of the nonprofit plaintiffs "are presently insufficient to support the organizations' standing," and cited Clapper, 568 U.S. 398, for that proposition. OPM, 2025 U.S. LEXIS 1451, at *1.

The district court in American Federation of Government Employees did conclude that "the unlawfully directed terminations disable[d] the federal agency services on which [the plaintiffs] or their members depend." 2025 WL 820782, at *7. But, unlike the plaintiffs in that case, the plaintiffs here are not challenging

- 10 -

an action to terminate the employment of only the newest and most inexperienced employees at an agency.  Moreover, the termination of probationary employees at issue in that case did not have the effect, as the District Court found the RIF here has had, of "eliminating entire offices and programs."  Nor did American Federation of Government Employees involve a situation in which a district court found, as the District Court found here, that the relevant defendants were "using a large-scale RIF" to "dismantle [an agency] -- and effectively close it."  So, even if the Supreme Court's grant of the stay in American Federation of Government Employees rested on a determination that a strong showing had been made that the district court in that case likely clearly erred in finding that the challenged terminations had the effect of disabling the relevant agencies from performing their statutory functions, it does not follow that the appellants here have made a strong showing that they are likely to succeed in demonstrating that the District Court erred in determining that the challenged RIF causes the plaintiffs injuries that are imminent under Clapper. See Dep't of Com. v. New York, 588 U.S. 752, 785 (2019) ("Our review is deferential, but we are 'not required to exhibit a naiveté from which ordinary citizens are free.'" (quoting United States v. Stanchich, 550 F.2d 1294, 1300 (2d Cir. 1977))).

Our reasons for rejecting the Clapper-based arguments that the appellants advance as to the "likelihood of success"

factor also require us to reject the other Article III-based argument that they advance as to that factor. In that argument, the appellants contend that they are likely to succeed in showing that the plaintiffs' bid for Article III standing impermissibly depends on an "abstract and generalized" interest in "vindicating the separation of powers" or a "programmatic injury" that turns federal courts into "continuing monitors" of the soundness of administration. But, as we have just explained, the appellants have not made a strong showing that the District Court likely clearly erred in finding, consistent with Clapper, that the plaintiffs face imminent injury from the challenged RIF precisely because that action has made it impossible for the Department to carry out statutorily assigned functions on which the plaintiffs directly rely. That being so, we do not see how the appellants have made a strong showing that their appeal likely will reveal that the plaintiffs' imminent injuries are properly characterized as merely "abstract and generalized" or "programmatic" rather than cognizable.

The appellants separately seek to satisfy the "likelihood of success" factor based on a non-Article-III-based jurisdictional ground. They argue that the District Court was barred from considering the plaintiffs' constitutional and APA claims challenging what the appellants call "the Department's personnel decisions" because the Civil Service Reform Act (CSRA)

provides "an exclusive procedure for challenging federal personnel decisions." Berrios v. Dep't of the Army, 884 F.2d 28, 31 (1st Cir. 1989).

The CSRA cases that the appellants cite do not hold, however, that when, as the District Court found here, "mass terminations [a]re explicitly implemented to shut down [an agency]," federal courts lack the power to hear non-CSRA claims brought by parties who will be imminently injured by the agency's effective inability to provide them with the services to which they are entitled.[4] See Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 212-15 (1994) (considering "whether petitioner's claims are of the type Congress intended to be reviewed within this statutory structure"). We do appreciate the appellants' concern that the CSRA may not be bypassed by the mere recharacterization of a challenge to a termination of employment. Still, we are loath at this juncture of the proceedings to attribute to Congress the intention in enacting the CSRA that the appellants appear to attribute to it. The appellants appear to be of the view that Congress intended to bar every challenge to an unlawful effort by the Executive to shut down a statutorily created agency by

---

[4] United States v. Fausto, 484 U.S. 439, 441, 448 (1988); Rodriguez v. United States, 852 F.3d 67, 74, 84 (1st Cir. 2017); González v. Vélez, 864 F.3d 45, 48 (1st Cir. 2017); and Berrios, 884 F.2d at 31, all involved suits brought by discharged federal employees.

summarily firing its employees en masse -- including, on the appellants' seeming view, even by terminating the employment of every single one of the agency's employees -- except for those specific challenges that the terminated employees themselves may choose to bring.  Cf. Axon Enter., Inc. v. FTC, 598 U.S. 175, 189 (2023) (noting that it would be "surprising" if claims raising questions about an agency's "structure or very existence" could not be heard in district court).

The appellants do invoke Block v. Community Nutrition Institute, 467 U.S. 340 (1984), as support for their position regarding the CSRA.  But Block held that a statute that permitted dairy handlers -- but not consumers -- to obtain review of "milk market orders" reflected Congress's intent to foreclose the ability of consumers to obtain judicial review of such orders.  Id. at 341-42.  It did not hold, as the appellants contend, that a comprehensive statutory scheme authorizing review of an agency action by one category of plaintiffs always forecloses claims by other plaintiffs regardless of the nature of those claims.  Thus, Block does not provide us with a reason to attribute to Congress the seemingly self-defeating -- and therefore "surprising," Axon Enter., Inc., 598 U.S. at 189 -- intention in enacting the CSRA that the appellants appear to assert that we must attribute to it.

Finally, the appellants rely on an order in which a divided panel of the Fourth Circuit granted the request to stay a

- 14 -

preliminary injunction that required the government to reinstate terminated employees.  See Maryland v. USDA, Nos. 25-1248, 25-1338, 2025 WL 1073657 (4th Cir. Apr. 9, 2025).  The summary order in that case does not make clear, however, whether the jurisdictional ground for granting the stay was based on the contentions that the government made about the CSRA or those that it made about Article III.  Id. at *1.  In addition, that case, like American Federation of Government Employees, concerned the termination of only probationary employees.  Id.  Thus, unlike this case, there was no allegation or finding by the district court in that case that mass terminations of employees at all levels of an agency were being used to shut it down.

**B.**

The appellants also take aim at the District Court's merits determinations in contending that they can meet their burden as to the "likelihood of success" factor.  They do not dispute, however, that, to meet that burden, they must show that both the District Court's constitutional ruling and its APA ruling are likely not to hold up.  So, we may bypass the appellants' contentions about the District Court's constitutional ruling because we conclude that the appellants have not met their "strong showing" burden as to the District Court's APA ruling.

The appellants assert that "[i]t violates neither the Constitution nor any other law for the government to endeavor to

operate as efficiently as possible or for politically accountable officials to make and implement their own judgments about staffing levels needed to carry out any statutory mandates."  They may mean by that assertion to contest the District Court's determination that the RIF and transfer of functions violated the APA.  But if so, that contention does not itself constitute a "strong showing" that the District Court's APA ruling is likely wrong.

Notably, in making that assertion, the appellants do not even attempt to engage with the District Court's record-based findings about the extent of the RIF or the intent behind both it and the transfer of functions to shut down the Department.  Nor do the appellants in making that assertion acknowledge, let alone meaningfully dispute, the District Court's record-based findings about the disabling impact of those actions on the Department's ability to carry out statutorily assigned functions.  Rather, the assertion merely favorably characterizes the actions found to have been contrary to law and arbitrary and capricious as run-of-the-mill personnel decisions.

The appellants separately assert that the plaintiffs "do not challenge reviewable agency action" under the APA.  That contention is premised, however, on the contention that the appellants are likely to succeed in showing that the RIF is reviewable only through the CSRA.  This contention thus fails for the same reasons as does their contention regarding whether the

CSRA imposes a jurisdictional bar to the APA claims concerning the RIF.

The appellants do invoke Carter v. U.S. Department of Education, 2025 WL 1453562 (D.D.C. May 21, 2025), in pressing their challenge in their stay motion to the District Court's APA ruling. In that case, a district court rejected a challenge to the same RIF at issue in this case insofar as the RIF impacted the Department's Office of Civil Rights (OCR). Id. at *1.

Carter involved a situation, however, in which the district court found that the "plaintiffs ha[d] not offered sufficient evidence demonstrating that OCR [failed] to perform its statutory and regulatory duties," id. at *6, such that their challenge was really to the Office's "general operations and the speed at which OCR [would] be able to process civil rights complaints in the future," id. at *9. Thus, we do not understand the district court in that case to have held that a reduction in force -- in its nature -- is not a discrete agency action subject to review under the APA, such that the APA's "agency action" requirement stands as an independent bar to an APA challenge to a specific reduction in force even when the CSRA does not stand as a bar to it.

By contrast, the District Court found here that "the massive reduction in staff has made it effectively impossible for the Department to carry out its statutorily mandated functions."

And the appellants fail to explain why a reduction in force that effects mass terminations and is implemented to effectively shut down a cabinet department fails to constitute a "discrete" agency action under the cases that they cite.  See Norton v. S. Utah Wilderness All., 542 U.S. 55, 62 (2004); see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 899 (1990); Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 20 (D.C. Cir. 2006). The appellants instead just assert that such a reduction in force is not a "discrete" agency action.  Thus, we cannot say that the appellants have made a strong showing that the plaintiffs here challenge "flaws in the entire 'program'" and request "wholesale correction under the APA," Carter, 2025 WL 1453562, at *9 (quoting Lujan, 497 U.S. at 892-93), which Lujan and Norton would bar them from doing, see id. at *10-11.

        The appellants separately assert that, even if the RIF is an agency action, it is the kind of agency action that is "committed to agency discretion by law," and so not subject to judicial review under the APA.  5 U.S.C. § 701(a)(2).  But, in support of this assertion, the appellants cite only to Sampson v. Murray, 415 U.S. 61, 83-84 (1974), which did not concern § 701(a)(2) and explicitly held that a district court could issue injunctive relief in cases where a plaintiff challenges an agency's decision regarding their employment, id. at 80, 83-84.

### c.

The final set of merits-based grounds for satisfying the "likelihood of success" factor that the appellants advance pertains to the remedy. The appellants first contend that "the district court lacked authority to order reinstatement of terminated employees to active status" because "[r]einstatement . . . [was] not a remedy that was traditionally available at equity." See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 318-19 (1999).

The appellants appear to be making this contention for the first time in their stay motion to us, notwithstanding our settled practice not to address previously unraised arguments absent "the most extraordinary circumstances." Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992). In any event, the appellants once more cite only to Sampson as support. See 415 U.S. at 83. But Sampson described the relevant historical practice as the "traditional unwillingness of courts of equity to enforce contracts for personal service either at the behest of the employer or of the employee." Id. (citing 5A Corbin on Contracts § 1204 (1964)). We thus do not understand Sampson to have spoken to the situation at hand, which concerns whether a court of equity would historically have been deprived of authority to remedy the effective disabling of a cabinet department of its statutorily

assigned functions, just because that disabling was effectuated through the mass termination of the department's employees rather than through, say, an order for the employees not to carry out their duties.

The appellants appear at times separately to contend that the District Court's injunction is unnecessarily overbroad, even to prevent the "unilateral[] clos[ure] [of] the Department." Insofar as the appellants contend that this is so because the preliminary injunction forces them to adhere to "the prior administration's employee count," we disagree with this understanding of the injunction.  The injunctive relief that the District Court ordered pertains, in relevant part, only to those employees who were "terminated . . . as part of the [RIF] announced on March 11, 2025" and applies only insofar as it is necessary "to restore the Department to the status quo such that it is able to carry out its statutory functions" (emphasis added), and not for the purpose of ensuring a particular level of staffing as adopted by a prior administration.

If the appellants instead mean that the injunction is overbroad because the reinstatement of certain employees is not necessary to prevent the effective disabling of the Department to carry out its statutorily assigned functions, they do not explain why.  Nor do they contest the District Court's evidence-based conclusion "that the Department will not be able to carry out its

statutory functions -- and in some cases, is already unable to do so" with the RIF in place.

## IV.

Turning to the remaining Nken factors, the appellants contend that the District Court's order imposes irreparable harm because it "usurp[s]" the Executive's Article II authority to manage the Department according to its own judgment.  They cite no authority, however, to support the contention that the Executive Branch suffers irreparable harm by being required to carry out Congress's duly enacted statutes.  See New York v. Trump, 133 F.4th 51, 72 (1st Cir. 2025).  That omission is concerning, given that it is the government's inability to "effectuat[e] statutes enacted by representatives of [the] people" that we have previously held gives rise to irreparable harm.  Int'l Ass'n of Machinists Loc. Lodge 207 v. Raimondo, 18 F.4th 38, 47 (1st Cir. 2021) (quoting Maryland v. King, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).

We also conclude that there is no force to the appellants' assertion that the preliminary injunction causes irreparable injury by "undermining implementation of an important presidential policy."  The appellants do not at any point in their stay motion specify what that "policy" is.  The District Court, however, identified the "policy" as the appellants' closure of the Department.  Yet, we do not understand the appellants to mean to

argue that they would be irreparably harmed by being barred from implementing _that_ policy, as they concede that they may not lawfully carry out such a policy.

The appellants assert that the injunction "requir[es] the government to continue employing individuals whose services it no longer requires" and "forc[es] adherence to a prior administration's judgment about how, and with how many employees, the Department should function." But, for the reason we have already explained, we do not understand the injunction to impose any requirement that the appellants adhere per se to the prior administration's staffing levels.[5]

All that said, we agree with the appellants that, if it were to turn out that the government was erroneously required to continue paying Department employees, then that injury would be irreparable to the extent that the appellants would not be able to recoup those expenditures. It is also the case that the District Court did not impose bond. So, on this basis, we conclude that

---

[5] The appellants do also make a passing contention that "[e]ndeavoring to comply with th[e] injunction . . . on the ordered timeframe" itself imposes an "extraordinary burden[]" warranting immediate relief. But the injunction itself does not impose any specific timeline apart from the deadlines for providing notice of the injunction and status reports to the District Court. And we do not see how complying with those aspects of the injunction imposes a burden on the government, no less one that is "extraordinary." Moreover, the appellants also do not identify any timeline ordered by the injunction that they contend is unreasonably short or excessively burdensome.

the appellants have identified an irreparable injury.  See Dep't of Educ. v. California, 145 S. Ct. 966, 968-69 (2025).

We also must consider, however, the other side of the ledger.  And we are not persuaded by the appellants' attempt to argue that, as to the third Nken factor, "issuance of the stay" will not "substantially injure the other parties [to this litigation]."  556 U.S. at 434 (quoting Hilton, 481 U.S. at 776).

The appellants base this assertion in part on arguments that mirror their arguments as to the first Nken factor for concluding that the impact of the RIF identified by the District Court was "speculative."  Thus, just as we concluded those arguments were not persuasive with respect to that factor, we conclude that they are not persuasive with respect to this one.

The appellants do contend that the plaintiffs cannot establish an injury that is irreparable because they can "recover any wrongfully withheld funds through suit in an appropriate forum."  Dep't of Educ., 145 S. Ct. at 969.  But, in Department of Education, the Supreme Court emphasized that the plaintiffs had "represented . . . that they ha[d] the financial wherewithal to keep their programs running" notwithstanding the federal government's failure to pay the funds allegedly due.  Id.  Here, by contrast, the District Court found that the record sufficed to support the plaintiffs' contention that the disabling of the Department's statutorily assigned functions caused by the

challenged actions would jeopardize their ability to proceed with their programs.  Moreover, Department of Education involved the loss of funds that arguably could be "recover[ed]" at a later date, id., whereas the District Court in this case specifically concluded that the harms to the plaintiffs from the Department's inability to provide its statutorily mandated services are of a kind that could not be recompensed.  Indeed, even if the plaintiffs ultimately prevail in this case, there is no guarantee that the Department could return to effective staffing levels on a reasonable timeline, given that its employees (including the many senior and experienced ones subjected to the RIF) may well have accepted new positions in the interim.

As to the final Nken factor, the appellants appear to rest their argument about "where the public interest lies," Nken, 556 U.S. at 434 (quoting Hilton, 481 U.S. at 776), on their contention that the public's interests are indistinguishable from the appellants' interests.  But "there is generally no public interest in the perpetuation of unlawful agency action." League of Women Voters of the U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016); see also New Jersey v. Trump, 131 F.4th 27, 41 (1st Cir. 2025); Newby, 838 F.3d at 12 ("[T]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" (quoting Washington v. Reno, 35 F.3d 1093, 1103 (6th Cir. 1994))).

**V.**

In sum, the appellants have failed to make a strong showing that they are likely to succeed in their appeal as to the injunctive relief at issue insofar as that relief is predicated on the plaintiffs' APA claims. They also have failed to show that the plaintiffs would not be substantially injured by a stay of this preliminary injunction during the pendency of this appeal. Nor have they shown that the public's interest lies in permitting a major federal department to be unlawfully disabled from performing its statutorily assigned functions.

Against that backdrop, we cannot say that the mere fact that the appellants have demonstrated some risk of irreparable harm entitles them to a stay. See Does 1-3 v. Mills, 39 F.4th 20, 25 (1st Cir. 2022) ("A stay 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'" (quoting Nken, 556 U.S. at 427)). Certainly, the appellants make no argument that this risk of harm in and of itself entitles them to a stay, such that they need not pursue the ordinary appellate means of overturning an adverse order. Nor are we aware of any controlling case suggesting that this risk entitles them to such extraordinary interim relief. Cf. Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin., 14 F.4th 624, 628 (7th Cir. 2021) ("The other factors are essentially a wash, so the final result is driven by the likelihood of success on the merits.").

What is at stake in this case, the District Court found, was whether a nearly half-century-old cabinet department would be permitted to carry out its statutorily assigned functions or prevented from doing so by a mass termination of employees aimed at implementing the effective closure of that department.  Given the extensive findings made by the District Court and the absence of any contrary evidence having been submitted by the appellants, we conclude that the appellants' stay motion does not warrant our interfering with the ordinary course of appellate adjudication in the face of what the record indicates would be the apparent consequences of our doing so.

The appellants' motion for a stay is **<u>denied</u>**.